PER CURIAM:
Claimant, an Ohio corporation, brought this action for tractor trailer damage which occurred as a result of claimant’s tractor trailer striking the side of a tunnel on Secondary Route 60/14.[1] Secondary Route 60/14 is a road maintained by respondent in Greenbrier County. The Court is of the opinion to make a reduced award in this claim for the reasons more folly stated below.
The incident giving rise to this claim occurred on September 16, 1998, at approximately 7:30 a.m. On the morning in question, claimant’s employee, Donald Lee Stalling, was driving a tractor trailer through Charleston en route to Roanoke, Virginia. The tractor being driven by Mr. Stalling was hauling a trailer of cargo eastbound along Interstate 64 at White Sulphur Springs.[2] Suddenly, an airline leak developed on the trailer, which required immediate attention. Mr. Stalling, having never driven through *98 this area before, needed assistance finding an immediate truck-stop. Using his CB radio, Mr. Stalling contacted an unidentified person to ask directions to the nearest truck-stop.[1] The unidentified person instructed Mr. Stalling to take the first White Sulphur Springs exit onto Secondary Route 60/14 and take a right, which would lead to Dixon’s, Inc., a truck-stop. Mr. Stalling complied with the instruction. As Mr. Stalling proceeded southward on Secondary Route 60/14 in the tractor trailer, he observed a UPS office on his left. Across from the UPS office, there was a open field. There were two signs, “one lane road” and “tunnel”, along the road, but no signs warning of a low tunnel or creek in the tunnel.
Eventually, Mr. Stalling came upon a tunnel owned by the CSX railroad, which was five hundred feet from the UPS office.[2] At the tunnel, Secondary Route 60/14 is bottlenecked into one lane of traffic with a width of fourteen feet, eleven inches. The middle of the tunnel has a height of fifteen feet, six inches and the sides of the tunnel are fourteen feet, two inches. These heights are consistent through the tunnel. At the point in the tunnel where the height is thirteen feet, six inches, the width of the tunnel is ten feet, ten inches. Two signs, “15-0” and “14-2”, adorn the side of the tunnel in order to indicate the height of the tunnel. The roadway through the tunnel is straight, but curves after exiting the tunnel. Inside the tunnel, a creek runs north on the tunnel’s right side. On the sides of the road, outside of the tunnel, there are two diagonal striped signs, which indicate that caution is required at the tunnel.[3]
Based upon the signs on the tunnel as well as personal knowledge and experience, Mr. Stalling believed that the trailer would clear the tunnel. At this time in the morning it was becoming dawn and Mr. Stalling slowed the speed of the tractor trailer to approximately ten to fifteen miles per hour. As the tractor trailer entered the tunnel, Mr. Stalling noticed a creek running on the right hand side of the tunnel so he was forced to maneuver the tractor trailer to the left hand side. This situation concerned Mr. Stalling and he feared going into the creek or hitting the tunnel. After entering the tunnel, the driver’s side of the trailer began scrapping the top of the tunnel. When the *99 tractor trailer made it through the tunnel and arrived at the Greenbrier State Forest side of the tunnel, it was no longer able to carry the cargo and Mr. Stalling had to call for assistance.[1]
Sometime after the incident, Trooper T. L. Bragg, a member of the West Virginia State Police, arrived at the scene, conducted an investigation, and filed a report, but he did not issue Mr. Stalling a citation. Employees from Dixon’s, Inc., also arrived at the scene with a flat-bed truck and transferred the cargo for Mr. Stalling and gave him an escort over Kate’s mountain to Dixon’s, Inc. Later in the morning, photographs of the area were taken by Mr. Stalling. Afterwards, Mr. Stalling traveled back to Zanesville, Ohio, without the cargo.
Claimant sustained loss in the amount of $5,178.40. This loss reflects an estimate for repair of the trailer in the amount of $4,394.90.[2] Currently, claimant still owns the trailer. The loss also reflects the amount of $783.50 for services rendered to claimant by Dixon’s, Inc., at the scene of the incident. Claimant did not have collision damage insurance on his truck or its contents.
The Court is of the opinion that respondent failed to reasonably maintain the roadway portion of the tunnel on Secondary Route 60/14. The combination ofthe height of the tunnel and the creek which runs through the tunnel creates an unreasonable risk for motorists. Travelers are forced to maneuver their vehicles to the left side of the one lane road, which in turn increases the immediacy that a motorist’s vehicle will strike some point of the tunnel’s arch. At the time of the accident, there were no signs warning travelers of the double hazard they are approaching. Notwithstanding respondent’s negligence, the Court is also of the opinion that claimant’s employee, Donald Lee Stalling, was negligent in his operation of the tractor trailer. As Mr. Stalling made his way to the tunnel, there were signs indicating that there could be problems ahead for a tractor and trailer. Mr. Stalling could have used the open field across from the UPS office to turn around. Instead, Mr. Stalling risked the chance of the tractor trailer not making the clearance. However, under the dire circumstances, Mr. Stalling’s actions were not totally unreasonable.
In a comparative negligence jurisdiction, such as West Virginia, the negligence of a claimant can reduce or bar recovery of a claim. Based on the above, the Court finds *100 that claimant was 20% negligent for the incident that occurred. Since claimant’s driver’s negligence is not greater than or equal to the negligence of respondent, claimant may recover 80% of the loss sustained.
In view of the foregoing, the Court makes an award to claimant in the amount of 80% of the damages for a total award of $4,142.72.
Award of $4,142.72.

 Claimant is division of P & D Transportation, Inc.

 The tractor was a 1985 model, while the trailer was a 1987 model. The dimensions of the trailer were forty-eight feet long, one hundred and two inches wide (the maximum federal standard) and thirteen feet four inches or thirteen feet six inches high. The height of the trailer depends on the weight of the trailer. At the time of the incident, the trailer was loaded with 35,000 pounds of cargo.

 The unknown person was incorrect in the instruction to Mr. Stalling. Since Mr. Stalling was proceeding eastbound on Interstate 64, he should have taken a left at the first White Sulphur Springs exit and then looked for Dixon’s, Inc., on his right.

 The drainage and arch belong to CSX, while the roadway itself belongs to respondent.

 According to respondent’s traffic engineer, Charles Raymond Lewis II, the diagonal signs are warning travelers about the creek that flows through the tunnel, not the size of the tunnel.

 As a safety-precaution, tractor trailer drivers do not back up once in a precarious situation, such as in the present case.

 The fair market value of the trailer in the previous condition was approximately the sum of $5,700.00. After repairs, the trailer’s value decreased approximately to the sum of $4,500.00.