PER CURIAM:
Claimants brought this action for vehicle damage which occurred when their trailer was damaged in a tunnel incident as they were traveling on County Route 60/14 in Greenbrier County. Lt. Col. Gooch was driving and his wife was a passenger in the vehicle. The tunnel at this location is maintained by respondent. Claimants allege that respondent failed to provide adequate warnings of the clearance inside the tunnel. The Court is of the opinion to make an award in this claim for the reasons more folly stated below.
Claimants purchased a 2008 Keystone Raptor Toy Hauler trailer in March of 2008 for $62,000.00. Lt. Col. Gooch testified that he and his wife purchased the trailer to serve as a second home while they were separated geographically due to their military duties. The trailer, which can be hauled on the back of a truck, is 39'1" long, 8'6" wide, and has an exterior height of 13'4". At the time of the incident, claimants were traveling from Louisville, Kentucky, to Ruckersville, Virginia, on 1-64 eastbound. Thereafter, Lt. Col. Gooch intended to relocate to Austin, Texas, to complete a fellowship at the Army War College, and he planned to live in the trailer. Lt. Col. Gooch stated that he never owned a trailer prior to this incident, but he had experience hauling trailers.
The incident giving rise to this claim occurred at approximately 7:00 p.m. on June 10, 2008. At the time of the incident, claimants were traveling through West Virginia on 1-64 East, and they decided to stop for the night at Pleasant Valley Recreational Vehicle Campgrounds in Greenbrier County. The incident occurred as claimants were trying to find the location of the campgrounds. Claimants took Exit 175 and drove onto County Route 60/14. It was raining, and claimants decided to follow the signs toward Greenbrier State Forest. When they reached the tunnel’s southbound entrance, Lt. Col. Gooch observed the “15'-0"” and the “14-2"” clearance signs that were posted at the top of the tunnel. He testified that he did not recall observing a “9-2"” clearance sign that preceded the signs positioned at the top of the tunnel. He drove through the tunnel and realized that he had made a wrong turn. He testified that, at the time, he did not notice any damage to the trailer from driving through the tunnel.
Lt. Col. Gooch turned around at a recreational vehicle park and proceeded through the tunnel’s northbound entrance. The same warning signs were posted at the top of the tunnel. Since the trailer’s height is 13'4", Lt. Col. Gooch thought he could clear the tunnel. He did not observe the “9-2clearance sign. Lt. Col. Gooch could not drive in the center of the tunnel due to a retaining wall that separated the road surface from a stream inside the tunnel. As they proceeded through the tunnel, they heard a crashing and scraping sound.
Claimants stopped the trailer to observe the damage. Although Lt. Col. Gooch did not notice any damage when the trailer went through the tunnel the first time, he stated that he and his wife later discovered light scrapes that extended for the length of the trailer. He testified that most of the damage was caused when the trailer went through the tunnel the second time. Claimants noticed that the roof of their trailer had struck the *247 top right portion of the tunnel. The evidence of record indicates structural damage resulted from the incident and that the main structural damage occurred on the front, passenger side of the trailer. The trailer also sustained damage to its rubber roof cap, including the sheeting and internal support frame. The invoice indicates that claimants had to replace the trailer’s roof, paneling, decking, and interior aluminum radius. As a result of this incident, claimants’ trailer sustained damage in the amount of $8,553.51. Claimants did not have insurance coverage for their loss.
Respondent avers that it provided adequate warnings of the tunnel’s clearance. Barry Williams, District Traffic Engineer for respondent in District Nine, testified that he is responsible for overseeing signing, pavement markings, and traffic signals in five counties, including Greenbrier County. Mr. Williams further testified that respondent had carefully placed warning signs on both the southbound and northbound entrances to the tunnel. Mr. Williams stated that the clearances vary at different locations inside the tunnel, and respondent installed signs to indicate these variations.
At the tunnel’s southbound entrance leading into Greenbrier State Forest, respondent installed the following warnings: 1) a “tunnel” sign with a “one lane” plaque beneath it; 2) a46-inch, “9'-2"” clearance sign that is situated 280 feet north of the tunnel; 3) two hazard paddles on the sides of the tunnel; 4) a “15'-0"” clearance sign at the apex of the tunnel on the tunnel’s face; and 5) a “14'-2"” clearance sign to the left of the “15'-0"” clearance sign on the tunnel’s face.
At the tunnel’s northbound entrance leading from Greenbrier State Forest to the interstate, respondent placed the following warnings: 1) a “tunnel” sign with a “one lane” plaque beneath it located 700 feet south of the tunnel; 2) a “9'-2"” clearance sign situated 375 feet south of the tunnel; 3) a hazard paddle sign located to the right of the entrance to the tunnel; 4) a “15'-0"” clearance sign at the apex of the tunnel on the tunnel’s face; and 5) a‘T4'-2"” clearance sign positioned to the right of the“15'-0"” clearance sign on the tunnel’s face.
Mr. Williams testified that the placement of signs on the tunnel created a unique situation because there are only a handful of similarly constructed tunnels in the State, and respondent had to apply traffic engineering principles to a nonstandard situation. Mr. Williams stated that at one time, all three signs were mounted to the tunnel, but that vehicles had knocked the signs off the face of the tunnel. According to Mr. Williams, respondent did not place the “9'-2"” clearance sign on the tunnel adjacent to the two clearance signs because respondent was concerned that it was too much information to display on the tunnel’s face at once.[34]
Steven Cole, Acting District Engineer in District Nine for respondent, testified *248 that he is responsible for overseeing all construction, bridge, maintenance, and right of way activities in District Nine. Mr. Cole is familiar with the tunnel on County Route 60/14. He stated that the railroad line is located on the top portion of the tunnel. Hart’s Run stream flows through the tunnel, and there is a retaining wall that serves as a barrier between the road and the stream bed. Mr. Cole stated that the retaining wall prevents water from undercutting the roadway surface. Although County Route 60/14 is the primary route into Greenbrier State Forest, Mr. Cole testified that it is a low priority road in terms of its maintenance.
The Court has considered this condition previously in Putnam Truckload Direct v. Div. of Highways, 23 Ct. Cl. 97 (1999). In Putnam, the driver of a tractor trailer was traveling through this same tunnel on County Route 60/14 in Greenbrier County when the driver’s side of the tractor trailer scraped the top of the tunnel, causing damage to the vehicle. Id. The Court held that respondent was negligent in its maintenance of the roadway portion of the tunnel but also determined that the driver was twenty-percent (20%) comparatively negligent. Id. The Court found that the combination of the height of the tunnel and the creek which flows through the tunnel creates an unreasonable risk for drivers. Id. at 99. However, the Court also found that the driver was negligent since the signs indicated that there could be problems ahead for a tractor trailer. Id. Further, the driver could have turned around, but he risked the chance that the vehicle would not make the clearance. Id.
In the instant case, the Court is of the opinion that the signs installed at the entrances to the tunnel failed to provide adequate warnings to travelers on County Route 60/14. Although respondent placed the essential measurements at various locations before entering the tunnel, the Court finds that the three measurements could be confusing for travelers. In this particular case, claimants focused on the “15'-0"” and “14'-2"” clearance signs installed at the face of the tunnel. However, the sign most essential to warn approaching members of the public is the “9'-2"” clearance sign, and it was not placed at the face of the tunnel. Although respondent placed the sign independently at both entrances to the tunnel, it should have been placed at the face of the tunnel to ensure that travelers would see it and recognize that it represented the tunnel’s lowest clearance level. The Court finds that the nine foot two inch measurement was especially significant because there was a retaining wall inside the tunnel that forced drivers to travel closer to the side of the tunnel. Thus, there is sufficient evidence of negligence upon which to base an award.
Notwithstanding the negligence of the respondent, the Court is also of the opinion that claimants were comparatively negligent in failing to observe the 46-inch, “9'-2"” signs that were placed at both entrances to the tunnel. The Court finds that there were posted warnings indicating that there could be problems ahead for a driver of a larger vehicle. In a comparative negligence jurisdiction such as West Virginia, the claimants’ negligence may reduce or bar recovery in a claim. Based on the above, the Court finds that the claimants’ negligence equals twenty-percent (20%) of their loss. Since the negligence of the claimants is not greater than or equal to the negligence of the respondent, claimants may recover eighty-percent (80%) of the loss sustained.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to the claimants in the amount of $6,842.81.
Award of $6,842.81.

 When asked why the “9'-2"” clearance sign was not placed on the face of the tunnel, Mr. Williams testified as follows:
A: Because we wanted to emphasize the 9 foot 2. If you just leave it with another sign, even just one other sign, then you’re kind of muddying the waters there and people won’t, you know, maybe not pay as much attention to it. If you have a sign out in advance by itself, oversized, highly reflective, that should get people’s attention right there and then they would know in advance that, hey, you know, I may not be able to get through this tunnel.